UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re LEHMAN BROTHERS
HOLDINGS INC., et al.,

                        Debtors.

1:10-cv-4699-RJH
1:10-cv-4700-RJH
(On appeal from Bankr. No. 08-13555)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

This case has a more complex posture than those a trial court is accustomed to seeing.

Appellants are various entities associated with SunCal,[1] a now bankrupt California housing

development consortium.  Their core concern is that the automatic stay emanating from the

Lehman Brothers bankruptcy in New York not limit their options in the SunCal bankruptcy in

California.  Because of the interplay between two ongoing bankruptcy proceedings on opposite

coasts, matters bearing on that concern have already been heard before a California bankruptcy

court, a bankruptcy appellate panel of the Ninth Circuit Court of Appeals, and the Bankruptcy

Court for the Southern District of New York; and an appeal is currently pending before the

---

[1] The Court will refer to appellants as "SunCal" throughout this Opinion.  However only some of the SunCal entities are appellants in this case.  They are:  (i) SunCal Communities I LLC, (ii) SunCal Communities III LLC, (iii) SCC/Palmdale LLC, (iv) Acton Estates, LLC, (v) SunCal Beaumont Heights, LLC, (vi) SunCal Emerald Meadows LLC, (vii) SunCal Johansson Ranch LLC, (viii) SunCal Bickford Ranch LLC, (ix) SunCal Summit Valley LLC, (x) Seven Brothers LLC, (xi) Kirby Estates LLC, (xii) SJD Partners Ltd., (xiii) SJD Development Corp., (xiv) SCC Communities LLC, (xv) North Orange Del Rio Land LLC and (xvi) Tezoro SF LLC.

Ninth Circuit Court of Appeals.  Moreover, this Court previously denied a motion for emergency relief arising from similar issues.

Before this Court today are appeals from two orders in the Lehman Brothers bankruptcy proceeding before the Southern District Bankruptcy Court.  Both are brought by SunCal entities in the midst of their own bankruptcy proceeding in California.  The first appeal is from the Bankruptcy Court's order approving a compromise between Lehman, Fenway Funding, Fenway Capital, Hudson Castle, and Deutsche Bank (the "Compromise Order").  That compromise included the transfer of certain loans on which SunCal is a debtor.  SunCal was not a party to the settlement.  However SunCal objected to it out of fear that the transfer would bring the SunCal loans within the scope of the Lehman automatic stay, prejudicing its efforts with respect to those debts in its California bankruptcy proceeding.  The second appeal concerns whether those loans, and the claims arising from them, should be excepted from the Lehman automatic stay—SunCal moved for relief from the Lehman stay, but the bankruptcy court denied that request (the "Stay Relief Denial Order"), and SunCal now appeals.  That second appeal is from a denial *without* prejudice: the Bankruptcy Court deferred a final ruling on the relief from stay motion in light of the fact that a related request—which could moot the motion here—is currently pending before the Ninth Circuit Court of Appeals.

For the reasons stated below, the orders of the Bankruptcy Court are affirmed and both appeals are denied.

## I. Factual and Procedural Background

The Court assumes the parties' familiarity with the facts and proceedings below.  The following factual and procedural history is provided for background purposes and does not constitute findings of fact by the Court.  Where appropriate disputes are noted in the margin.

Between 2005 and 2007 the California housing market was good, and entities associated with Lehman Brothers made several loans, totaling over $1.5 billion, to various SunCal entities, which used the proceeds to aggressively develop real estate projects in California.  Subsequently, "market conditions slowed…."  (SunCal Stay Mem. 4.)[2]  In September of 2008 one of the loaning Lehman entities, Lehman Brothers Holdings ("LBHI"), filed for bankruptcy in New York.  In October of 2008 another of those entities, Lehman Commercial Paper

---

[2] The Court references the parties' briefs as follows:

OPENING BRIEF RE APPEAL OF ORDER APPROVING DEBTORS' MOTION PURSUANT TO BANKR. RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC, 10-CV-4699 Docket N. 10, as "SunCal Compromise Mem.";

Appellees' Response To SunCal Appellants' Opening Brief Re Appeal of Order Approving Debtors' Motion Pursuant To Bankr. Rule 9019 For Authority To Compromise Controversy In Connection With A Repurchase Transaction With Fenway Capital, LLC And A Commercial Paper Program With Fenway Funding, LLC, 10-CV-4699 Docket N. 15, as "Lehman Compromise Opp.";

THE SUNCAL APPELLANTS' REPLY TO THE APPELLEES' OPENING BRIEF RE APPEAL OF APPEAL OF [sic] ORDER APPROVING DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC, 10-CV-4699 Docket N. 18, as "SunCal Compromise Rep.";

SUNCAL APPELLANTS' OPENING BRIEF REGARDING THEIR APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING THE SUNCAL DEBTORS' MOTION FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY OF THE LEHMAN ENTITIES DOES NOT APPLY TO THE SUNCAL DEBTORS' CHAPTER 11 CASES; OR, IN THE ALTERNATIVE, GRANTING THE SUNCAL DEBTORS RELIEF FROM THE LEHMAN ENTITIES' AUTOMATIC STAY, 10-CV-4700 Docket N. 9, as "SunCal Stay Mem.";

Appellees' Response to SunCal Appellants' Opening Brief Regarding Their Appeal Of The Bankruptcy Court's Order Denying The SunCal Debtors' Motion For An Order Determining That The Automatic Stay Of The Lehman Entities Does Not Apply To The SunCal Debtors' Chapter 11 Cases, Or, In The Alternative, Granting The SunCal Debtors Relief From The Lehman Entities' Automatic Stay, 10-CV-4700 Docket N. 13, as "Lehman Stay Opp.";

SUNCAL APPELLANTS' REPLY TO APPELLEES' RESPONSE TO SUNCAL APPELLANTS' OPENING BRIEF REGARDING THEIR APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING THE SUNCAL DEBTORS' MOTION FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY OF THE LEHMAN ENTITIES DOES NOT APPLY TO THE SUNCAL DEBTORS' CHAPTER 11 CASES; OR, IN THE ALTERNATIVE, GRANTING THE SUNCAL DEBTORS RELIEF FROM THE LEHMAN ENTITIES' AUTOMATIC STAY, 10-CV-4700 Docket N. 16, as "SunCal Stay Rep."

("LCPI"), filed for bankruptcy in New York.  In November 2008 the SunCal entities filed for bankruptcy in California.

In August 2008, just prior to the bankruptcy filings, the Lehman entities engaged in a complicated debt transaction that involved, in part, the SunCal loans.  LCPI and Fenway Capital, LLC ("Fenway Capital") entered into a master repurchase agreement ("MRA" or "Repo") through which a number of assets, including some SunCal loans, were sold by LCPI to Fenway Capital subject to being transferred back to LCPI in the future.  (Lehman Compromise Opp. 5-6.)  In turn Fenway Capital issued a Variable Funding Note to Fenway Funding, which issued commercial paper notes to LBHI.  (*Id.*)  LBHI then executed a guaranty of LCPI's repurchase obligations under the MRA/Repo, and pledged the commercial paper to JPMorgan.  (*Id.*)  As appellees explain it, the ultimate exchange was "effectively between Lehman entities, with Fenway Funding and Fenway Capital serving as mere conduits with no economic interest in any outcome."  (*Id.*; Appx. 7, 511.)[3]  Because of that structure however, Lehman "had to seek consent from Fenway, among others, before taking actions concerning the Repo Assets."  (*Id.*)

In November 2008, just after the bankruptcy filings, SunCal moved for relief from stay in the Lehman Commercial bankruptcy proceeding in the Southern District of New York.  That motion sought blanket stay relief "to allow the [SunCal] Debtors to generally administer their California Chapter 11 cases."  *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655, 660 (9th Cir. BAP 2009).  Without mentioning the existence of the Fenway structure, Lehman opposed the request.  (Appx. 21 ¶

---

[3] Appellants dispute this account of the transaction, and especially dispute that the recent repurchase was subject to the MRA/Repo.  *See infra* Section III.D.  Appellants simply explain that "LCPI, as 'Seller,' and Fenway, as 'Buyer,' entered into a repurchase agreement ('Repo'), whereby LCPI transferred all right title and interest in the seven Disputed Loans to Fenway."  (SunCal Stay Mem. 5.)

15.)  The New York Bankruptcy Court denied the motion as overbroad, but did so without prejudice to SunCal refiling specific stay relief requests as needed.  (*Id.*)

The dispute then moved to the West Coast.  In a February 2009 response to claims filed by Lehman in the California Bankruptcy Court, SunCal argued that the Lehman Lenders' claims should be equitably subordinated.  SunCal asserted that equitable subordination action could be used to defend against Lehman's claims without violating the Lehman/New York automatic stay, an uncontentious proposition.  What's more however, SunCal contended that because it had raised equitable subordination as a defense, it could prosecute it to its conclusion without violating the Lehman automatic stay.

The question of whether a California equitable subordination action would violate the Lehman/New York automatic stay is a question of the scope or applicability of the automatic stay.  Such questions as to the scope of the stay are subject to the concurrent jurisdiction of both the overseeing bankruptcy court (the New York court) and the court in which the litigation is to be stayed (the California court).  *See Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 347-48 (2d Cir. 1985).  Accordingly by Order dated March 10, 2009 the California Bankruptcy Court determined the scope of the Lehman/New York stay.  It found that the stay did not apply to any attempt by SunCal to equitably subordinate Lehman's claims.  The California Bankruptcy Court thus found that SunCal could pursue equitable subordination in California.

Lehman appealed that decision to the Bankruptcy Appellate Panel of the Ninth Circuit (BAP).  In an opinion dated December 15, 2009, Judge Hollowell writing for the panel reversed the scope-of-stay determination of the California Bankruptcy Court.  *See In re Palmdale Hills Property, LLC*, 423 B.R. 655 (9th Cir. BAP 2009).  Concluding that "equitable subordination

seeks affirmative relief," the panel found that "adjudication of [SunCal's] equitable subordination claim violates [LCP's] automatic stay."  *Id.* at 667.  The panel thus found that SunCal could not pursue equitable subordination in California.  The panel then noted that SunCal was not "hamstrung by this decision; [SunCal] may either seek relief from stay or initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case."  *Id.* at 668.  However SunCal did not then request relief from stay or initiate an equitable subordination action in New York, but rather appealed the decision of the appellate panel to the Ninth Circuit Court of Appeals.  That appeal is pending.

Prior to the appellate panel's decision, SunCal had discovered the Fenway structure and taken the position that the Lehman stay is inapplicable to loans involved in the Fenway structure independent of whether equitable subordination is offensive or defensive.   (See Appx. 21 at 1635 ¶ 5.)  On October 2, 2009 the California Bankruptcy Court entered findings that certain disputed claims were in fact owned by Fenway, and that Lehman's filing of the claims as "creditors" was improper.[4]  SunCal has since prosecuted the equitable subordination action "against Fenway, as the owner of the Disputed Claims" as if the stay did not apply to them for that reason.  (SunCal Stay Mem. 7.)  Lehman disputes that the Fenway structure has any effect on the stay, and maintains that LCPI has throughout been "required [by the MRA] to repurchase the Repo Assets, including the SunCal Loans," (Lehman Compromise Mem. 13), which were therefore always appropriately part of the Lehman Bankruptcy estate.

The dispute regarding the effect of the Fenway structure and that regarding the automatic stay have both since returned to New York.  On March 24, 2010, Lehman moved in the New York Bankruptcy Court pursuant to Bankruptcy Rule 9019 for authority to enter into a

---

[4] SunCal also moved to dismiss the BAP appeal on that basis.  The appellate panel nonetheless decided the appeal as discussed in the preceding paragraph.  *See In re Palmdale Hills Property, LLC*, 423 B.R. at 661-663.

compromise that, *inter alia*, unwound the Fenway structure and placed the SunCal loans in the possession of LCPI.  SunCal filed a third party objection to that compromise.  In that objection SunCal contended the compromise would bring loans not previously subject to the Lehman stay within its scope.  Separately, SunCal moved before the New York Bankruptcy Court for relief from the Lehman stay in order to pursue equitable subordination back in California.  The New York Bankruptcy Court disposed of both motions at oral argument on May 12, 2010.  The Court approved the compromise and denied without prejudice SunCal's motion for relief from the automatic stay.

In reviewing the compromise, the Bankruptcy Court took a proffer of the testimony of a Mr. Fitts as to the business purposes for the transaction.  (Appx. 25, 1801-1803.)  Mr. Fitts would have testified that the compromise would eliminate delays and administrative fees associated with the Fenway structure and would eliminate further litigation regarding the Fenway structure.  The Bankruptcy Court also heard SunCal's objections based on their fears that the compromise would prejudice their ability to pursue equitable subordination (in California).  However the Bankruptcy Court disagreed that SunCal's fears would necessarily be realized:

> THE COURT:  I don't believe that there is anything in the motion before me that requires me to make any findings as to the consequences in the SunCal bankruptcy of my unwinding the structure.  So part of what I don't understand is why you're spending all this time arguing about those consequences. (Appx. 25, 1818)

Mr. O'Keefe, representing appellants, responded to that prompt from the Bankruptcy Court:

> MR. O'KEEFE:  Your Honor, with that characterization, I'm more than willing to sit down.  I just wanted to make sure, Your Honor, that in connection with the next motion, I didn't prejudice any rights in this motion.  Otherwise, I wouldn't have said anything.  But I appreciate Your Honor's clarification in that regard. (Appx. 25, 1818-1819.)

After that exchange, the testimonial proffer, and after an appearance from the creditors'

committee supporting the settlement, the Court approved the compromise.

> THE COURT: Okay.  Having heard the argument presented by the debtors, the
> support of the creditors' committee and the opposition by the SunCal voluntary
> debtors, which appears to the Court to have been more in the nature of a
> reservation of right as to the potential consequences in the SunCal bankruptcy
> case in California to approval of the unwinding of the structure, I am satisfied that
> sufficient business justification has been presented to approve the motion and that
> the undoing of the structure results in a number of claimed benefits to the estate
> including the elimination of certain costs and the preservation of the rights of
> separate debtors so that the distribution rights of those creditors looking to
> particular members of the Lehman corporate family will [be] unaffected by the
> approval of a settlement.
> (Appx. 25, 1824-25.)

The Bankruptcy Court then turned to the SunCal appellants' motion for relief from stay.

At the outset the Bankruptcy Court expressed concern that an appeal regarding the scope of the

stay was already pending before the Ninth Circuit.  (*See* Appx. 25, 1826 (asking at outset

"what's the time horizon of briefing and adjudication in the Ninth Circuit?).)  The Bankruptcy

Court explained that it had originally expected SunCal's stay relief motions to be filed in New

York, but that instead a related matter regarding the scope of the stay had been litigated in

California and could potentially moot the stay relief motion.

> THE COURT: … I couldn't have been clearer in January of 2009 that this was
> the Court that you needed to come to for purposes of getting stay relief, in that
> instance, relating to the use of cash collateral.
>     But it's now May of 2010.  It's quite a long while after that.  And one of
> the concerns I have is that Judge Smith and I are players in a cross-country game
> of gaming the system, of using courts to your particular purpose in order to gain
> strategic advantage.  And speaking for myself, I don't like that.  I suspect that
> Judge Smith would say the same thing if she were here.
> (Id. at 1835.)
> …
> THE COURT: Let me ask you a question.  Assuming that you are successful in
> the Ninth Circuit whenever that happens, what's the consequence of that
> successful prosecution of the appeal of the BAP decision in the Ninth Circuit?
> What happens then?  Does it moot my need to decide the pending motion?
> (Id. at 1836.)

…
MR. O'KEEFE:  I would say yes [it could moot the pending motion], if it's
before the ruling.  Yes, because if they decide that the BAP is overruled, then at
this point, Judge Smith[ is] ruling with concurrent jurisdiction…. So if she
determines the stay doesn't apply and nobody comes back here than that's the law
of our case and we proceed on that basis….
(Id. at 1837-38.)

After hearing appellants' other arguments at length, (Appx. 25 at 1838-1850), the Bankruptcy

Court denied without prejudice their request for relief from stay.  The Bankruptcy Court

explained:

THE COURT:  Ultimately, the question of whether or not I should grant relief
from the automatic stay is driven by my application of the Sonnax factors.
[*Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus. Inc.)*,
907 F.2d 1280, 1286 (2d Cir. 1990).]  And both parties appear to be focused most
heavily on the balance of harms factor.  That's convenient because I prefer to
focus on that one myself.

One of the reasons I have a difficult time finding that there is any material
harm to the SunCal debtors in not granting their motion for stay relief is that they
did not bring it until now.  The SunCal debtors have scrupulously avoided
coming into this court from November of 2008 until today.  And have managed to
deal with their litigation requests in the bankruptcy court and beyond apparently
without material impairment in those efforts.  In effect, they've elected their
remedy.  They have chosen to proceed with litigation on their home court.  And
when they suffered a reversal at the BAP level at the end of last year the[y] had to
review their strategy again.

Having gone to the Ninth Circuit, I believe the Ninth Circuit is the place
for this question to be decided.  And I'm going to defer my decision with respect
to stay relief until after the Ninth Circuit has acted.

…

As to active litigation, the motion is denied without prejudice to being
reconsidered at some later time in the case, either before or after the Ninth Circuit
has acted.

In the following days, the Bankruptcy Court issued two written orders memorializing its rulings;

one dated May 12, 2010 approving the compromise, and another dated May 17, 2010 finding

that SunCal had not established cause for obtaining relief from the automatic stay and denying

the stay relief motion.

It is those two orders that SunCal appeals.

## II.  Standard of Review

With respect to both appeals, the standard of review is *de novo* as to conclusions of law, and highly deferential otherwise.  "A bankruptcy court's decision to approve a settlement should not be overturned unless it is manifestly erroneous and a clear abuse of discretion."  *Fischer v. Pereira (In re 47-49 Charles St.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997) (Koeltl, J.).  And "[t]he decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge…[an appellate Court] may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion."  *In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re WorldCom Inc.*, No. 05 cv 05704, 2006 WL 2255071 (S.D.N.Y. Aug. 4, 2006) ("The Bankruptcy Court's decision should not be disturbed on appeal where the record shows that court considered the appropriate factors for determining whether cause for relief from the stay exists.").

## III.  Compromise Order

In Appellants' terms, the issues presented on the appeal of the Compromise Order are as follows.

1.  Did the relief granted in the Compromise Order exceed the Lower Court's jurisdiction?

2.  Is the Compromise Order void?

3.  Did the Lower Court use the proper standard in ruling on the Compromise Motion?

4.  Did the Lower Court correctly apply the proper standard in ruling on the Compromise Motion?

5.  Should the Compromise Order be set aside on the grounds that it approved a motion filed in bad faith?

6.  Were certain factual findings in the Compromise Order clearly erroneous:

>   (a.)  whether LCPI will have repurchased the Repo Assets pursuant to the MRA
>
>   (b.) whether LBHI is fully subrogated to the claims of Fenway against LCPI to the full extent of any payment by LBHI in respect of such claims; and
>
>   (c.)  whether LBHI shall succeed to any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway under the Fenway Repo and/or the Fenway Documents (which liens and security interests shall remain in effect notwithstanding any subsequent transfer by LCPI of any of the Repo Assets or any interest therein), in the same priorities as held by Fenway Capital or Fenway Funding, to secure LBHI's subrogated claims, which liens and security interests shall hereby be deemed assigned transferred by Fenway Capital and Fenway Funding to LBHI" is in error

## A.  The Compromise Order was not an injunction

Appellants' first issue presented is premised on an incorrect assumption—that the Compromise Order was an injunction.  (*See* Suncal Compromise Mem. 12-16 (arguing that compromise order enjoined action in California bankruptcy court and thus exceeded jurisdiction);  SunCal Compromise Mem. 16-18 (arguing that "Lower Court Lacked the Power to Grant Injunctive Relief, Directly or Indirectly.").)  As the argument goes, the disputed claims were not previously subject to the stay, were brought within the control of bankrupt entities by the settlement, and will surely now be subject to the stay.  Thus because the settlement permitted a transfer of assets that may in the future result in the application of the stay, appellants assert that the Compromise Order itself was an injunction.  Appellants cite cases holding that an order's substantial effect, not the judge's characterization thereof, determines its appealability.  *e.g. In re Dow Corning Corp.*, 255 B.R. 445, 472 (E.D.Mich. 2000).  However appellants have

not identified a case holding that a compromise order which could lead to the application of the automatic stay was itself an injunction.

Windmills are not giants, and the Court will not play Sancho to the Appellants' Quixote. The Compromise Order was not an injunction, nor was its substantial effect injunctive relief. The Bankruptcy Court explicitly disclaimed any necessary effect in the California action. (Appx. 25, 1819 (confirming with counsel that "there's nothing about my unwinding the Fenway structure in accordance with the amended order that you have proposed that necessarily impacts the characterization of anything in the SunCal bankruptcy case?").) *Cf. MacArthur Co. v. Johns-Manville Corp.*, 837 F.3d 89, 93-94 (2d Cir. 1988) (bankruptcy court issued separate injunction order explicitly provided for as condition to parties' settlement).  Appellants themselves made sure to reserve their rights with respect to the effect of the compromise on the automatic stay. (*Id.* at 1818 ("MR. O'KEEFE:  Your Honor, with that characterization, I'm more than willing to sit down.  I just wanted to make sure, Your Honor, that in connection with the next motion, I didn't prejudice any rights in this motion.").)  And unlike in cases cited by appellants, nothing in the text of the order demands any kind of injunctive relief.  Rather, the Compromise Order merely approves a transaction which may or may not eventually lead to the application of an automatic statutory stay.  Accordingly the Court declines to credit appellants' arguments premised on the Compromise Order being an injunction.

### B. The SunCal Automatic Stay

Appellants also argue that the Compromise Order is "void" because it violated the SunCal/California automatic stay.   However Appellants did not preserve that argument by adequately raising it below.  Arguments not properly made below are not preserved for appeal. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n. 29 (2d Cir. 2005) (party could

not appeal issue when argument below limited to one-sentence in ten page brief).  Appellants never brought up their automatic stay in oral argument in the Bankruptcy Court, and in their eight page opposition limited mention of the argument to a one-sentence footnote.  Since appellants did not further raise the issue, they have waived their right to raise it in this appeal.

Nor would SunCal's automatic stay argument be successful had they preserved it for appeal.  The argument is premised on the notion that the Compromise Order was an act to recover claims against SunCal for purposes of 11 U.S.C. § 362(a)(1).  But the statute only implicates acts to recover against a debtor, such as "the commencement or continuance of actions, including the issuance of process, to recover prepetition claims against debtors."  *In re Greene*, 50 B.R. 785, 787 (S.D.N.Y. 1985).  The compromise involved the transfer of debts on which claims could be based, but was not an action against SunCal and did not itself seek to recover the debts.  Moreover the compromise merely transferred certain loans and associated disputed claims against SunCal, and "creditors are permitted to transfer a claim or interest against a debtors' estate to a third party without violating the stay."  *In re GGSI Liquidation Inc.*, 351 B.R. 529, 582 (Bankr. N.D.Ill. 2006) *rev'd on other grounds Paloian v. Grupo Serla S.A. de C.V.*, -- B.R. --, 2010 WL 2491251 (N.D.Ill. June 17, 2010).  Accordingly the Court would find that the Compromise Order did not violate the SunCal automatic stay were the issue properly before it on this appeal.

### C.  The proper standard and its application

Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court has the discretionary authority to approve a compromise.  *See* Fed R. Bankr. P. 9019(a).  In determining whether a compromise should be approved, the bankruptcy judge must determine whether it is "fair and equitable." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424, 88 S.Ct. 1157, 1163 (1968).  In so doing he must "apprise himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," *id.*, and he "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.*  In short, "informed by the opinion of the parties, the Trustee, and counsel and its familiarity with the litigation, the bankruptcy court must make a considered, independent judgment as to whether a settlement is fair and equitable and 'in the best interests of the estate.'" *In re 47-49 Charles Street, Inc.*, 209 B.R. 618, 621 (quoting *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (quoting *Protective Committee*, 390 U.S. at 424, 88 S. Ct. at 1163.).  The Court finds that the Bankruptcy Court applied this standard in reviewing the compromise motion, (Appx. 23, at 17-47), and therefore reviews the Bankruptcy Court's determination for abuse of discretion.  *See In re 47-49 Charles Street, Inc.*, 209 B.R. 618, 619, 621 (S.D.N.Y. 1997).

Approval of the compromise according to the fair and equitable standard was well within the Bankruptcy Court's discretion.  The Bankruptcy Court accepted the advice of counsel that the settlement was the result of protracted arms length negotiations and was in the best interests of the debtors; it considered the proferred testimony of Mr. Fitts regarding the economic advantages of the settlement; it considered the potential consequences to the SunCal debtors and satisfied itself that they did not warrant rejecting the settlement; and it satisfied itself that sufficient business justification existed for approving the settlement, including the reduction of administrative costs and the preservation of the rights of separate debtors.  The Bankruptcy

Court's independent determination that the settlement was fair, adequate, and in the best interests of the estate was not an abuse of discretion.

Appellants argue that the Bankruptcy Court inadequately considered the impact of the compromise on their interests.  Indeed "if third parties complain to a judge that a decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside." *IRAP Litigation*, 957 F.2d 1020, 1025 (2d Cir. 1992).  However the Bankruptcy Court did consider their objections, at length, and ultimately rejected them on the basis of its finding that the compromise would not necessarily effect their rights.  Appellants confuse consideration-and-rejection with failure to consider.  As support for the argument that the Bankruptcy Court "*completely failed* to weigh the impact of the closing of the Claims Transaction on the SunCal Appellants," (Appellants' Compromise Mem. 21 (emphasis in original)), appellants cite to the very section of the transcript in which the Bankruptcy Court explains why their objections do not defeat the compromise.  (Id. (quoting Appx. 23, at 1818 ("I don't believe that there is anything in the motion before me that requires me to make any findings as the consequences in the SunCal bankruptcy of my unwinding the structure.  So part of what I don't understand is why you're spending all this time arguing about those consequences.")  Accordingly appellants have not demonstrated that the Bankruptcy Court failed as a matter of law to consider SunCal's interests.

Nor did the Bankruptcy Court abuse its discretion when it determined that the SunCal appellants' objections did not warrant rejecting the compromise.  The Bankruptcy Court approved the compromise over SunCal's objections in light of its conclusions that (1) the compromise would not necessarily prejudice the SunCal bankruptcy proceedings, and (2) even if it did, appellants had not sufficiently demonstrated a harm to them that justified rejecting the

compromise.  It was justified in doing so: two independent means for relief from the stay (the Ninth Circuit appeal and an RFS motion in New York) mitigated whatever harm might be caused by potential application of the stay.  Moreover as the Ninth Circuit BAP pointed out, SunCal would not be "hamstrung [by application of the stay; they may] initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case."  *In re Palmdale Hills Property, LLC*, 423 B.R. at 668.

Appellants also argue that the Bankruptcy Court ignored evidence of bad faith.  "The best interests standard under Bankruptcy Rule 9019 contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith."  *In re Healthco Intern., Inc.*, 136 F.3d 45, 53 (1st Cir. 1998) (declining to hold Bankruptcy Court in error for considering presence of "good faith" in evaluating compromise under best interests standard).  However the evidence that the compromise was negotiated in bad faith is sparse. Appellants contend that because LCPI did not mention the Fenway structure in various pleadings in 2008 and 2009, it acted in bad faith.  But the relevant question is whether the compromise itself was negotiated in bad faith.  Even assuming *arguendo* that LCPI made bad faith submissions in 2008 and 2009, those submissions are only loosely connected to the settlement negotiations, and would thus serve as very tenuous evidence of bad faith in the latter. Appellants' only other piece of evidence is their *ipse dixit* that the structure of the compromise must have been intended in bad faith.  However the evidence to the contrary was significant: Mr. Fitts testified that the transaction resulted from protracted arm's-length negotiations, and the Bankruptcy Court found that the evidence showed it would substantially ease administrative burdens on the estate.  Appellants have not demonstrated that the Bankruptcy Court abused its discretion by not finding that the transaction was negotiated in bad faith.

### D.  Other Findings of Fact

Appellants contend that three findings of fact contained in the written order memorializing the Bankruptcy Court's approval of the compromise were clearly erroneous.  But they do not submit sufficient evidence to support those claims.  The finding that LCPI's repurchase of Repo Assets was "pursuant to the MRA" is supported by the fact that the MRA required and provided for repurchase of those assets, and that the MRA was terminated pursuant to the compromise.  Appellants quibble with particular terms of the MRA that under their interpretations were not satisfied by the settlement.  But contrary interpretations of the contract lead to contrary conclusions.  Appellants' interpretive arguments are insufficient support to find that the Bankruptcy Court committed clear error.

Appellants also contend that the Bankruptcy Court erred in finding that LBHI became fully subrogated to the claims of Fenway and that LBHI succeeded to Fenway's liens and security interests in the Repo assets.  Appellants premise their arguments on the notion that such subrogation and succession are, for different reasons, impossible.  However the Bankruptcy Court only found that subrogation and succession "to the full extent provided under the Fenway Documents, the LBHI guaranty with respect to the MRA and applicable law…"  (SunCal Appx. 24)  Even assuming, *arguendo*, that appellants impossibility arguments were correct, they would only effect the extent of subrogation and succession and not the factual accuracy of the Bankruptcy Court's findings.   Accordingly appellants have not demonstrated clear error with respect to these findings.

## IV.  Stay Relief Denial Order

In appellants' terms, the issues presented on appeal from the Stay Relief Denial Order are as follows:

1.  Did the Lower Court err in concluding that debtor-LCPI's post-petition acquisition of seven disputed loans from nondebtor Fenway Capital LLC would stay the SunCal Appellants' equitable subordination action and Chapter 11 plan incorporating the ES Action pending in the U.S. Bankruptcy Court for the Central District of California, even though LCPI had full knowledge of the Disputed Loans' connection to the ES Action and the Plan?

2.  Did the Lower Court err in its conclusion that Lehman Brothers Holdings, Inc.'s automatic stay would stay the ES Action and Plan after LCPI's post-petition acquisition of the Disputed Loans from non-debtor Fenway, even though LBHI had full knowledge of the Disputed Loans' connection to the ES Action and the Plan?

3.  Did the Lower Court use the incorrect legal standard in denying the SunCal Appellants' Relief From Stay Motion?

4.  Did the Lower Court misapply the legal standard in denying the SunCal appellants' Relief From Stay Motion?

5.  Did the Lower Court abuse its discretion in denying the SunCal Appellants' RFS motion?

**A.  Scope of Stay**

In its first two issues on appeal, SunCal objects to conclusions by the Bankruptcy Court as to the scope of the stay.  If the settlement-order-as-injunction argument was appellants' windmill, then these arguments are their shaving basin.[5]  The Bankruptcy Court never did enter any conclusions as to the applicability of the Lehman stay over their equitable subordination actions.

Appellants focus on a portion of the argument transcript after the Bankruptcy Court concluded its determination, denied their motion for relief from stay, and invited a written order reflecting its ruling.  In that portion of the transcript, appellants' counsel asks for further clarification from the Bankruptcy Court:

MR. O'KEEFE:  Your Honor, can I ask a few clarifying questions?
THE COURT:  You can ask.

---

[5]In addition to tilting at windmills, Don Quixote mistook a barber's common shaving basin for the solid gold helmet of Mambrino, which was believed to be enchanted with great power.  Miguel de Cervantes Saavedra, *The Ingenious Hidalgo Don Quixote of La Mancha,* Part ii, Chap. xxi (1615).

MR. O'KEEFE:  Is the Court --

THE COURT:  The motion's denied.  I want to be really clear on that.  Your motion is denied.

…

MR. O'KEEFE:  So the Court -- is the Court finding the stay applies and the motion is denied?

THE COURT:  The stay applies and the motion is denied.

MR. O'KEEFE:  Is the Court finding that insofar as LBHI -- what is the Court's finding with respect to the application of their stay?

THE COURT:  I'm not making any particularized findings.  And let me be really clear, the law in the Southern District of New York as stated by Judge Gonzalez in the Enron case, and I choose to follow his reasoning, is that litigation brought by a party against a debtor seeking to equitably subordinate claims of that debtor constitutes a violation of the automatic stay.  To the extent that there are debtors or debtor property implicated by your litigation I am saying the stay applies.  And I'm not going to say more than that.  And I think it's a good time for you to sit down.

As this Court understands the Bankruptcy Court's statements on the record, it did not come to any independent conclusions as to the scope of the stay.  Rather, the Bankruptcy Court reiterated the status quo—that because of the California rulings the stay applied.  Although there is some ambiguity in the record, for numerous reasons the Bankruptcy Court's statements could not have been independent conclusions as to the scope of the stay.  First, the statement came after a full ruling and after the Court invited a written order memorializing that ruling.  Second, the written order memorializing the ruling did not mention the scope of the stay.  Third, the Bankruptcy Court explicitly stated that it was "not making any particularized findings" immediately before making the statement.  Finally, a finding as to the scope of the stay—a question of law—would be inconsistent with denial without prejudice or deferral to the Ninth Circuit's determination of that very question.  Accordingly the Court concludes that the Bankruptcy Court did not independently determine the scope of the stay and declines to address SunCal's arguments in that regard.

### B.  Denial of Relief from Stay

The other issues raised by SunCal relate to the Bankruptcy Court's decision to deny their relief from stay motion.  They object to the law applied by the Bankruptcy Court; they object to the way it applied that law; and they object to the conclusions that it reached.

It must be noted at the outset that the Bankruptcy Court denied appellants' request for relief from stay "*without prejudice* to being reconsidered at some later time in the case, either before or after the Ninth Circuit has acted."  (Appx 23 at 74:20-22 (emphasis added).)  The decision below was not a final determination as to whether "cause" will exist to ultimately grant appellants the relief they request.  Rather the Bankruptcy Court determined that in light of the pending action in the Ninth Circuit, cause did not *then* exist to grant relief from stay.  There was good reason to wait: a decision by the Ninth Circuit in appellants' favor (one they assert that they are likely to win) would moot the issue and make a "cause" determination by the Bankruptcy Court unnecessary.  Thus in light of the fact that the motion was denied without prejudice, the Court is not so much reviewing a finding that the stay should never be lifted, but only a finding that cause did not exist to lift the stay on May 12.

Section 362(d) of the Bankruptcy Code provides that the Bankruptcy Court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1).  In determining whether "cause" exists to lift the automatic stay, courts in this circuit consider the twelve factors outlined in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286.[6]  After outlining the list of factors, the *Sonnax*

---

[6] The *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has  assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9)

Court noted that in light of the issue's "unstructured nature," "the decision of whether to lift the stay is committed to the discretion of the bankruptcy judge." *Id.* (internal quotations omitted).

Appellants argue that the Bankruptcy Court misapplied the "balance of harms" factor. Specifically, they contend that the Bankruptcy Court incorrectly determined that the potential harm to SunCal was belied by their delay in bringing a request for relief from the stay and was mitigated by the existence of ongoing litigation regarding the stay in the Ninth Circuit.  Those conclusions were not clearly erroneous.  Although SunCal points out a number of justifications for the delay, it could also nonetheless be seen as the Bankruptcy Court saw it—as evidence that harm was neither imminent nor likely to be significant.  Moreover the potential for relief in the Ninth Circuit or upon renewing their motion in the Bankruptcy Court further mitigates the potential harm to appellants.

Appellants also argue that the Bankruptcy Court "used an improper legal standard" because it did not find an equitable basis to lift the stay under *Bohack Corp. v. Borden*, 599 F.2d 1160 (2d Cir. 1979).  *Bohack* held that the stay should be equitably lifted "when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."  *Id.* at 1168.  But while *Bohack* is good law in this Circuit that would potentially be relevant to the determination of whether to lift the stay, it has not superseded *Sonnax* as the principle precedent for determining when "cause" exists pursuant to 362(d)(1).  *Sonnax*, which was decided well after *Bohack*, is routinely referenced as the leading relief from

---

whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.
    *Sonnax*, 907 F.2d at 1286
Only those factors bearing on the particular case need be considered.  *Id.* at 1285; *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

stay precedent in this Circuit.  *See, e.g., In re Martetxt Holdings Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010); *In re Worldcom, Inc.*, 2006 WL 2255071, at *8 (S.D.N.Y. Aug. 04, 2006).

The *Bohack* decision is at its core equitable.  It is concerned with many of the values reflected in the *Sonnax* factors: "protection of the debtor," *Bohack*, 599 F.2d at 1168, "the potential for abuse," *id.*, "spar[ing] the debtor the expense of defending itself in litigation," *id.*, "judicial economy," *id.* at 1169, and "interference with the administration of the debtor's estate," *id.*  These principles are not inconsistent with the *Sonnax* principles applied by the Bankruptcy Court.  The Bankruptcy Court's reliance on *Sonnax* was not an error.

Nor was the result reached by the Bankruptcy Court a clearly erroneous application of *Sonnax*, even considering the equitable values expressed in *Bohack*.  In light of the fact that the Bankruptcy Court denied the motion without prejudice in an attempt to defer to the Ninth Circuit, judicial economy weighed significantly in favor of the Bankruptcy Court's decision.  And for the same reason the hardship to SunCal was reduced—since the Bankruptcy Court invited further consideration of the issue as necessary, the hardship suffered is only that caused by waiting for a decision, not that caused by permanent application of the automatic stay.  The Bankruptcy Court did not abuse its discretion in denying, without prejudice, appellants' motion for relief from the automatic stay.

## V. Conclusion

The Court has considered SunCal's remaining arguments on appeal and considers them without merit.  For the foregoing reasons the judgments of the Bankruptcy Court—the Compromise Order and Stay Relief Denial Order—are AFFIRMED.  Both appeals (10-cv-4699; 10-cv-4700) are DISMISSED.  On July 12, Lehman filed a motion to strike portions of the amended statement of record.  That motion is DENIED AS MOOT.


SO ORDERED.


Dated: New York, New York
      August 27, 2010

Richard J. Holwell
United States District Judge